# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**RYAN DUNAI**,                                  **Case No. 14-cv-600-pp**

        Plaintiff,

   v.

**STANLEY DOMAN, JAMES ZANON,
JAMES BRAASCH, JONATHAN DUDEK,
JASON GROLEAU, WILLIAM IERONIMO,
KENVIN JENNERJOHN, ALAN JOHNSON,
SARAH KRAFT, ROGER NORTON,
DEONTA ROBERTS, GRANT SCHLIEVE,
ERIC SCHROEDER, DANIEL WOLF,
MARK BORKOWSKY, SEAN MCWANE,**

        Defendants.

---

## DECISION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DKT. NO. 25)

---

      Plaintiff Ryan Dunai is a Wisconsin state prisoner. On May 27, 2015, the court entered an order allowing the plaintiff to proceed on his claim that the defendants deprived him of his rights in violation of the United States Constitution because they ignored his complaints of extreme cold in the Oshkosh Correctional Institution (Oshkosh) segregation unit during the winter of 2014. Dkt. No. 19. On August 13, 2015, the defendants filed a motion for summary judgment, Dkt. No. 25, which now is fully briefed. For the reasons stated below, the court grants the defendants' motion for summary judgment

1

as to defendant Sean McWane, and denies the defendants' motion as to the remaining defendants.

## I. FACTS[1]

### A. Parties

The plaintiff was incarcerated at Oshkosh from January 31, 2013 until April 8, 2014, and was housed in the segregation unit from January 17, 2014 through April 8, 2014. Dkt. No. 32 at 1.

All of the defendants worked at Oshkosh during the relevant time period: James Zanon was employed as a Supervising Officer 2 (Captain), id.; Stanley Doman was employed as a Supervising Officer 1 (Lieutenant), id.; James Braasch, Jonathan Dudek, Jason Groleau, William Ieronimo, Kevin Jennerjohn, Alan Johnson, Sarah Kraft, Roger Norton, Deonta Roberts, Grant Schlieve, Eric Schroeder, and Daniel Wolf were employed as Correctional Officers, Dkt. No. 32 at 2-3; Mark Borkowsky was employed as a Correctional Sergeant, id. at 3; and Sean McWane was employed as a HVAC/Refrigeration Specialist, id..

### B. The Plaintiff's Claims

The plaintiff states that the winter of 2013-2014 was especially cold. Dkt. No. 33 at ¶27. Between January 20 and February 16, 2014, for thirty-two out of thirty-five days the low temperature dipped below five degrees, and for twenty-seven out of thirty-five days, the high temperature did not rise above

---

[1] The court takes the facts from the "Plaintiff's Response to Defendants' Proposed Findings of Fact," Dkt. No. 32, and the "Defendants' Response to Plaintiff's Proposed Findings of Fact," Dkt. No. 38. The facts in this section are undisputed unless otherwise indicated.

twenty degrees. Id. at ¶27. Defendant Zanon noted that, when it is cold outside, the temperature in the segregation unit feels colder because the outside temperature leaks through the walls. Dkt. No. 38 at 6. A non-party correctional officer stated that during January and February 2014, he noticed that the plaintiff's segregation wing was colder than the other wings. Dkt. No. 38 at 14. Although he explained that the temperature did not seem extreme to him, he believed it may have been extreme for the inmates living in that wing. Id.

The plaintiff states that from the time he arrived in segregation on January 17, 2014, until late February 2014, his cell was extremely cold. Dkt. No. 33 at ¶34. He states that it was so cold that water left in a cup would turn to ice overnight and that, most of the time, he could see his breath. Id. at ¶35. The plaintiff states that he suffered physically from the cold: he shivered uncontrollably and experienced pain in his fingers, toes, hands, feet, ears, and face. Id. at ¶36. In addition, the plaintiff states he lost his appetite, and thus, lost weight because of the cold, id. at ¶37, that he had trouble sleeping, id. at ¶38, and that he developed blisters, muscle aches, and headaches, id. at ¶39. He states he suffered emotionally, and now becomes anxious whenever the temperatures become cold. Id. at ¶40.

The plaintiff states that inmates in the segregation unit "were allotted deck shoes, orange boxer shorts, a t-shirt, a jumpsuit, a scrub top, a towel, a washcloth, and" one wool blanket. Id. at ¶¶24, 25. He contends that the facility did not provide inmates with "thermals," insulated long underwear, or a winter

3

coat, id. at ¶26, and that no one at Oshkosh provided him either with extra clothes or bedding to address the extreme cold in his cell, id. at ¶50.

### C. The HVAC System in the Segregation Unit

The segregation building at Oshkosh is divided into eight zones (i.e., blocks of rooms/cells), which are heated separately. Dkt. No. 32 at 4. Each zone consists of approximately twelve cells. Dkt. No. 38 at 3. All segregation cells have a wall that faces outside. Id. The hallways in the segregation unit are heated as part of a zone that is separate from the cells, although all the zones are heated in the same way. Id.

Air handlers are designed to supply 65-degree air to each zone, and booster coils are supposed to adjust the temperature according to pre-set temperature points for each zone. Dkt. No. 32 at 4. The defendants indicate that the pre-set temperature for each zone in the segregation building during the winter of 2014 was 71 degrees. Dkt. No. 32 at 5. Only maintenance has control over the Oshkosh segregation unit thermostat. Dkt. No. 38 at 4.

Defendant McWane has a computer in his office that shows a layout of each building, the pre-set temperatures, and the actual temperatures. Dkt. No. 32 at 4. McWane receives an alarm, or a notification, if a zone's temperature drops below 68 degrees or rises above 79 degrees. Dkt. No. 32 at 5. While "McWane cannot tell the temperature of any particular cell," the defendants note that that "the thermostat measuring the temperature" for a given zone "pulls air equally from all cells in the zone using an air balancer so that every cell has the same amount of airflow." Dkt. No. 38 at 4.

4

McWane stated that he checks the computer every morning to make sure the zone temperatures are appropriate and "that everything is running smoothly." Dkt. No. 32 at 5. In addition, the staff is trained and "expected to submit work orders for things they observe to be broken, including problems with the HVAC system." Dkt. No. 38 at 4.

    D.    HVAC System Problems in January 2014

In early January 2014, a problem developed with the pre-heat coil on one of the air handlers in the segregation building. Dkt. No. 32 at 6-7. Specifically, the air handler would "trip-out, causing the fan to shut off, the outdoor air dampers to close, and the heating valve to a full heat position." Id. The defendants state that there was no heat loss when this occurred. Id. The plaintiff disagrees, stating that the "failing transducer led to dropping temperatures." Id.

The transducer was replaced twice, first on January 3, 2014, id. at 6, and again on January 14, 2014, id. at 7. The defendants maintain that the latter replacement resolved all of the problems and that there were no work orders submitted for heating system problems for the rest of January or February 2014. Id. the plaintiff disagrees; he says the problems were not resolved, because through most of February, temperatures in his cell were cold enough to freeze water and for him to see his breath. Id.

McWane maintains that in January or February 2014, he did not receive any alarms or notifications to indicate that a temperature in a zone had dropped below 68 degrees or risen above 79 degrees. Id.

5

### E. Inmate Complaints about the Cold

The parties agree that, in a prison setting, it is "not uncommon for inmates to make verbal complaints to staff at various times throughout a shift." Dkt. No. 32 at 9. The defendants state that, while all complaints are taken seriously by staff, the volume and frequency of the complaints require staff to use their discretion when determining whether and how to address a complaint. Id. They indicate that not all verbal complaints are documented in the complaint log book, but that staff does document significant issues to alert staff on other shifts. Id. The defendants concede that there is no documentation in the log book about cells being extremely cold in mid-January through February 2014. Id. at 10. The plaintiff responds that his complaint about the extreme cold was very significant, that he made it numerous times to numerous people, and that he wasn't the only inmate who complained about the cold. Id.

The defendants argue that if defendant Correctional Sergeant Borkowsky received a complaint about the cold, and if he could verify that there was an actual problem, he "would have used a digital thermometer to measure the temperature . . . if there was sufficient time and resources to do so." Dkt. No. 32 at 15. To measure the temperature, the defendants argue, the inmate would need to be moved to a different cell while staff obtained the temperature reading. Id. They argue that obtaining such a temperature reading is complicated because the segregation unit generally was filled to capacity during the time period in question, and because there were "numerous other

6

tasks that had to be performed on the unit." Id. at 15-16. The defendants concede that defendant Borkowsky never took a temperature reading of the plaintiff's cell during the relevant time period, nor directed any other staff to do so, "because there was no need or reason to do so." Id. at 16.

The plaintiff responds that he complained to the following defendants, many of them repeatedly, about the extreme cold in his cell: Borkowsky, Braasch, Dudek, Groleau, Ieronimo, Jennerjohn, Johnson, Kraft, Norton, Roberts, Schlieve, Schroeder, Wolf, Zanon, and Doman. Dkt. No. 32 at 16; Dkt. No. 38 at 11. He states that on January 30, 2014, he filed an inmate complaint about the temperature in his cell. Dkt. No. 38 at 15. He complained that his cell was so cold that water in a cup had frozen overnight, and he noted that he had complained to Zanon and Doman but that nothing had been done. Id.

The plaintiff states that other inmates, including Bendigo Mosness and Darquice Streeter, also complained about the cold. Dkt. No. 33 at 1-2, 7; Dkt. No. 38 at 15-17. Streeter stated that, while he was in segregation, water would freeze in the windowsill, and Mosness indicated that he could see his breath. Dkt. No. 38 at 16-17. Both inmates said that, although they complained to prison officials, no one took any action. Dkt. No. 38 at 16-19.

The plaintiff alleges that a non-party correctional officer noted that he received complaints from some inmates about the cold, although not from the plaintiff. Dkt. No. 38 at 14. When he notified Borkowsky about the complaints, Borkowsky instructed him to give one of the inmates extra blankets. Dkt. No. 38 at 14. Borkowsky denies that the plaintiff complained to him about the cold

7

or that other officers notified him of complaints that the plaintiff had made to them. Dkt. No. 32 at 11-12.

## II. DISCUSSION

### A. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Ames v. Home Depot U.S.A., Inc., 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." Anderson, 477 U.S. at 248. A dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

A party asserting that a fact cannot be disputed or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be

8

admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

    B.    <u>Protection from the Cold</u>

The Eighth Amendment[2] imposes duties on prison officials to provide humane conditions of confinement, <u>Farmer v. Brennan</u>, 511 U.S. 825, 832 (1994), which include protecting prisoners from the extreme cold. <u>Dixon v. Godinez</u>, 114 F.3d 640, 642 (7th Cir. 1997) (citing <u>Antonelli v. Sheahan</u>, 81 F.3d 1422, 1433 (7th Cir. 1996); <u>Murphy v. Walker</u>, 51 F.3d 714, 720-21 (7th Cir. 1995) (<u>per curium</u>)). "To assess whether cold cell temperatures constitute cruel and unusual punishment, courts must consider factors including 'the severity of the cold; its duration; whether the prisoner has alternative means to protect himself from the cold; the adequacy of such alternatives; as well as whether he must endure other uncomfortable conditions as well as cold.'" <u>Flores v. O'Donnell</u>, 36 Fed. App'x 204, 206-07 (7th Cir. 2002) (citing <u>Dixon</u>, 114 F.3d at 644) (other citations omitted). "The cold need not present an imminent threat to the inmate's health to implicate the Eighth Amendment." <u>Flores</u>, 36 Fed. App'x at 207 (citations omitted).

---

[2] The court allowed the plaintiff to proceed with an Eighth Amendment conditions of confinement claim and a Fourteenth Amendment substantive due process claim. Dkt. No. 19. Both claims arise from the plaintiff's allegations about the extremely cold temperatures in his cell. Here, any substantive due process rights enjoyed by the plaintiff are essentially coextensive with his right under the Eighth Amendment to be free from cruel and unusual punishment. <u>See, e.g.</u>, <u>Lunsford v. Bennett</u>, 17 F.3d 1574, 1583 (7th Cir. 1994). Because the Eighth Amendment serves as the primary source of protection for inmates alleging inadequate shelter, the court will analyze his claim only under the Eighth Amendment.

Assessing whether the alleged conditions are sufficiently serious is a fact-intensive inquiry, which has prompted the Seventh Circuit to note,

> Though we do not say that it can never be resolved on summary judgment, the question of whether the severity of the cold, in combination with the length of time which the inmate had to endure it, was sufficient to violate the Eighth Amendment is one which will often be peculiarly appropriate for resolution by the trier of fact.

Dixon, 114 F.3d at 643.

To succeed on a general conditions of confinement claim, "a prisoner must also show that prison officials were deliberately indifferent to his serious needs." Id. The plaintiff must show that a defendant official "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety; the official must both [have] be[en] aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must [have] also draw[n] the inference. Del Raine v. Williford, 32 F.3d 1024, 1032 (7th Cir. 1994). Deliberate indifference requires "more than an ordinary lack of due care for the prisoner's interests or safety." Whitely v. Albers, 475 U.S. 31, 319 (1986). "Failure by prison officials to respond to complaints about cell conditions can demonstrate deliberate indifference." Flores, 36 Fed. App'x at 207 (citations omitted).

    C.    Application of the Law to the Facts of the Plaintiff's Case

        1.    *A Genuine Dispute of Material Fact Exists about Whether the Conditions Were Sufficiently Serious to Violate the Eighth Amendment.*

The plaintiff has alleged that he was exposed to extreme cold for half of January and most of February, resulting in physical and emotional discomfort.

10

He supports his claim of extremely cold conditions with information about the unusually cold temperatures during that winter; the deposition testimony of other inmates who made similar complaints about the cold; the deposition testimony of officers who stated that the segregation cells seem colder (if not extremely so) than other areas when it is cold outside; the deposition testimony of an officer who stated that he had received complaints from other inmates (although not the plaintiff) about the cold and had provided extra blankets to one inmate as a result of those complaints; and his own sworn testimony about water freezing in his cell, his ability to see his own breath, and his lack of extra clothing or blankets as an alternative means for staying warm.

The defendants have presented an affidavit and deposition testimony from a prison HVAC specialist who states that the HVAC system was in working order while the plaintiff was in segregation, that the temperature in all zones was pre-set to 71 degrees, and that there were no indications during that time that the temperature in any zone had fallen below 68 degrees. They have also submitted sworn testimony from officers indicating that the plaintiff never complained to them about cold temperatures and that none of them felt any personal discomfort from the cold during that time. Finally, the defendants state that, although the plaintiff saw health services five times during his stay in segregation, he never reported any medical issues that could be attributed to the cold.

In light of the contradictory evidence submitted by the parties, the court concludes that a genuine issue of material fact exists about whether the

11

conditions of the plaintiff's cell were sufficiently serious to violate the Eighth Amendment. The defendants concede that, "There is no documentary evidence of the temperature in the cells during [the plaintiff's] time in segregation," Dkt. No. 26 at 7 (arguing that there is information only about entire <u>zones</u> of cells), and officers testified that temperatures in the segregation cells seemed colder than in other areas because those cells shared a wall with the exterior of the building, through which cold air seemed to leak. Drawing all reasonable inferences in a light most favorable to the plaintiff (the non-moving party), the court finds that the plaintiff has demonstrated that there are genuine disputes as to material facts, and the evidence the defendants have presented does not demonstrate that they are entitled to judgment as a matter of law.

> 2. *A Genuine Dispute of Material Fact Exists Regarding Whether Defendants James Zanon, Stanley Doman, James Braasch, Jonathan Dudek, Jason Groleau, William Ieronimo, Kevin Jennerjohn, Alan Johnson, Sarah Kraft, Roger Norton, Deonta Roberts, Grant Schlieve, Eric Schroeder, Daniel Wolf, and Mark Borkowsky Were Deliberately Indifferent to the Plaintiff's Serious Needs.*

The plaintiff states that he and other inmates complained to defendants Zanon, Doman, Braasch, Dudek, Groleau, Ieronimo, Jennerjohn, Johnson, Kraft, Norton, Roberts, Schlieve, Schroeder, Wolf and Borkowsky about the extreme cold temperatures in the segregation cells, and that those defendants took no action to address the complaints. Those defendants deny that the plaintiff ever complained to them about cold temperatures. They highlight that there are no recorded complaints in the log book, and that there were no work orders for the HVAC system submitted during the relevant time.

The above recitation makes clear that the parties have presented the court with a he said/they said set of facts, not appropriate for resolution by summary judgment. If the fact-finder accepts the plaintiff's facts—that he made numerous complaints to these defendants and they did nothing (did not adjust the heating setting, did not provide him with additional clothing or blankets, and apparently did not enter his complaints in the log book), then he has demonstrated that prison officials failed to respond to complaints about cell conditions, which the Seventh Circuit has held can demonstrate deliberate indifference. The defendants dispute the plaintiff's version of the facts. Accordingly, the court cannot grant summary judgment in favor of these defendants.

The court will, however, grant summary judgment in favor of defendant McWane. The plaintiff does not allege that he informed McWane of the cold temperatures in his cell, and he argues repeatedly that none of the other defendants tried to correct the problem by contacting McWane. Dkt. No. 31 at 10 ("none of them contacted McWane about the lack of heat"), 11 ("they could have informed maintenance of the cold conditions;" "It is further undisputed that none of them contacted maintenance about [the plaintiff's] complaint"). Further, the plaintiff does not rebut McWane's sworn testimony that McWane never received an alarm or notification on his computer that the temperature in any zone had fallen below 68 degrees. "To establish deliberate indifference, a plaintiff must show that the prison official had '*actual* knowledge of impending harm . . . .'" Flores, 36 Fed. App'x at 207. The plaintiff has failed to make such

13

a showing as to McWane, so the court grants summary judgment in favor of McWane, and dismisses the complaint as to him only.

### III. CONCLUSION

The court **ORDERS** that the defendants' motion for summary judgment (Dkt. No. 25) is **DENIED** as to defendants James Zanon, Stanley Doman, James Braasch, Jonathan Dudek, Jason Groleau, William Ieronimo, Kevin Jennerjohn, Alan Johnson, Sarah Kraft, Roger Norton, Deonta Roberts, Grant Schlieve, Eric Schroeder, Daniel Wolf, and Mark Borkowsky.

The court **ORDERS** that the defendants' motion for summary judgment (Dkt. No. 25) is **GRANTED** as to defendant Sean McWane. The court **ORDERS** that defendant Sean McWane is **DISMISSED** as a defendant in the case.

Dated in Milwaukee this 15th day of October, 2015.

BY THE COURT:

HON. PAMELA PEPPER
United States District Judge

14

Case 2:14-cv-00600-PP   Filed 10/15/15   Page 14 of 14   Document 39